IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSOLIDATION COAL COMPANY,<br>a Delaware corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>MARION DOCKS, INC., a West<br>Virginia corporation,<br><br>   Defendant. | Civil Action No. 08-1696<br><br>District Judge McVerry<br>Magistrate Judge Lenihan<br><br>Doc. No. 6 |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Dismiss, or, in the alternative, to Transfer, at Doc. No. 6 be denied.

### II.  REPORT

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction, or in the alternative, to Transfer the above-captioned action to the United States District Court for the Northern District of West Virginia, Clarksburg Division.

#### A.  Relevant Facts

This action arises from Defendant's alleged breach of contract and breach of implied duties of good faith and fair dealing concerning a long-term coal supply agreement between the parties.

According to the Affidavit of Craig Kelly submitted by Plaintiff at Doc. No. 8-3, Plaintiff

Consolidation Coal Company is a Delaware corporation with its principal place of business in this judicial district. (Doc. No. 8-3 at ¶ 2.) Plaintiff is licensed to do business in Pennsylvania and files its tax returns in Pennsylvania. Its operations are predominately managed, and its contracts for the purchase and/or sale of coal are administered in this judicial district. (Doc. No. 8-3 at ¶ 4.)

According to the Affidavit of Kevin Bealko submitted by Defendant at Doc. No. 6-2, Defendant is a West Virginia corporation with a principal place of business in Bridgeport, West Virginia. (Doc. No. 6-2 at ¶ 2.) It owns or leases coal mines and reserves located in West Virginia. (Doc. No. 6-2 at ¶ 3.) It is not qualified, licensed or otherwise authorized to do business in Pennsylvania. (Doc. No. 6-2 at ¶ 4.) In addition, according to Defendant, it does not own assets, have employees or a mailing address, maintain bank accounts, rent office space, or manage properties in the Commonwealth of Pennsylvania. (Doc. No. 6-2 at ¶¶ 5-7.)

Plaintiff indicates that at the end of 2007, senior representatives of Defendant, including its President, initiated contact with Plaintiff at its headquarters in Pittsburgh, Pennsylvania to inquire whether Plaintiff was interested in purchasing coal from Defendant. (Doc. No 8-3 at ¶ 5.) During Defendant's initial contact with Plaintiff, Defendant offered to travel to Pittsburgh to visit Plaintiff at its offices in an effort to further business discussions. Plaintiff agreed, and two senior business representatives of the Defendant traveled to Pittsburgh to pursue these business negotiations. (Doc. No. 8-3 at ¶ 6.) At the Pittsburgh meeting, Defendant provided Plaintiff with an overview of its mining operations, including review of mine maps and models, and other data regarding the quality of coal therein. General terms regarding the purchase of coal were discussed. (Doc. No. 8-3 at ¶ 7.) Thereafter, Defendant placed numerous follow-up calls to

Plaintiff to negotiate pricing, and to discuss other issues. (Doc. No. 8-3 at ¶ 8.) On February 25, 2008, Plaintiff entered into a Coal Sales Agreement ("Agreement") with Defendant wherein Defendant agreed to supply one million eighty tons of coal to Plaintiff. The Agreement is governed by the laws of West Virginia. (Doc. No. 6-2 at ¶ 11.) Plaintiff contends that Defendant "has failed to deliver a single ton of coal" to Plaintiff per the terms of the Agreement. (Doc. No. 8-3 at ¶¶ 9-10.)

From March 2008 through May 2008, Plaintiff demanded that Defendant fulfill its obligations under the terms of the Agreement. (Doc. No. 8-3 at ¶ 11.) Plaintiff indicates that, at this time, Defendant made numerous calls and sent electronic communications to Plaintiff in Pittsburgh making assurances to Plaintiff that it would comply with the Agreement. (Doc. No. 8-3 at ¶ 12.) Defendant appears to dispute this assertion and indicates that "all of the dozens of phone calls involving [Defendant's] personnel were placed to, from or within West Virginia." (Doc. No. 6-2 at ¶ 13.) Plaintiff further indicates that senior representatives of Defendant traveled to Pittsburgh a second time to assure Plaintiff that the delays in performance were temporary, and that coal shipments would be made within the next month. (Doc. No. 8-3 at ¶¶ 12-13.) On May 28, 2008, Defendant sent to a letter to Plaintiff in Pittsburgh concerning the status of its performance. (Doc. No. 8-3 at ¶ 14 & Doc. No. 8-4 at 2.) In total, Plaintiff indicates that in negotiating the terms of the contract, and addressing Defendant's failure to perform thereunder, "[Defendant] exchanged a total of approximately 40-50 telephone calls, emails, and letters with [Plaintiff's] representatives located in this district, including numerous letters regarding [Defendant's] failure to perform under the Agreement." (Doc. No. 8-3 at ¶ 17.)

B. **Legal Standards**

1. Motion to Dismiss for Lack of Personal Jurisdiction

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the court must accept as true all allegations contained in the complaint. *William Rosenstein & Sons, Co. v. BBI Produce, Inc.,* 123 F. Supp.2d 268, 269 (M.D. Pa. 2000) (citing *Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir. 1996)). In response to a 12(b)(2) motion, however, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Id.* at 269-70 (citing *Dayhoff,* 86 F.3d at 1302; *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir. 1990)); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir. 1984). Thus, because a 12(b)(2) motion requires resolution of factual issues outside the pleadings, the plaintiff may not rely solely upon the pleadings to establish jurisdictional facts. *William Rosenstein & Sons, Co.,* 123 F. Supp.2d at 270 (citing *Time Share Vacation Club,* 735 F.2d at 66).

2. Motion to Dismiss for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a)

On a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), a court must accept as true all allegations of the complaint unless contradicted by defendant's affidavits. *Whipstock Natural Gas Servs., LLC v. Trans Energy, Inc.*, 2008 WL 4287158, at *2 (W.D. Pa. Sept. 17, 2008) (citing *Holiday v. Bally's Park Place, Inc.*, 2007 WL 2600877, at *1 (E.D. Pa. Sept. 10, 2007). The court must draw all reasonable inferences and resolve all conflicting facts

4

in favor of the plaintiff. *Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005); *accord Heft v. AAI Corp.*, 355 F. Supp.2d 757, 762 (M.D. Pa. 2005) ("Whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff."). The defendant, as the moving party, bears the burden of demonstrating that venue is improper. *Myers v. American Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982).

      3.      <u>Motion to Dismiss pursuant to the Doctrine of *Forum Non Conveniens* or, in the alternative, to Transfer pursuant to 28 U.S.C. § 1404(a)</u>

In reviewing a motion to dismiss on grounds of *forum non conveniens* or, in the alternative, transfer from a proper venue pursuant to 28 U.S.C. § 1404(a), the factors examined by the Court include convenience to the parties and witnesses, and the interests of justice. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).[1] The party seeking to transfer the case has the burden of establishing the justice of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

      **C.**      **<u>Analysis</u>**

      1.      <u>Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)</u>

The starting point for determining whether personal jurisdiction can be exercised over a nonresident defendant is Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e)

---

1. More specifically, the language of 28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

"authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Mellon Bank (East) PSFS, National Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted). Pennsylvania's long-arm statute, codified at 42 Pa.C.S.A. § 5322(b), permits Pennsylvania courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [Pennsylvania] allowed under the Constitution of the United States." Thus, as long as the requirements of the Due Process Clause of the United States Constitution have been satisfied, jurisdiction will lie over non-resident defendants in Pennsylvania. *Farino,* 960 F.2d at 1221; *Pennzoil Products Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citing *Farino,* 960 F.2d at 1221; *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir. 1994)); *Santana Products, Inc. v. Bobrick Washroom Equipment,* 14 F. Supp.2d 710, 713 (M.D. Pa. 1998).

It is fundamental that, to satisfy due process requirements, the defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted). The minimum contacts requirement "protect[s] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted). This framework enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render

them liable to suit." *Id.* at 297. Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the "cause of action is related to or arises out of the defendant's contacts with the forum," *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002)), while general jurisdiction exists where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action. *Pennzoil*, 149 F.3d at 200 (citation omitted). In this case, Plaintiff argues that specific jurisdiction over Defendant is proper; however, Defendant argues that neither type of personal jurisdiction exists.[2]

In determining whether it can exercise specific jurisdiction, the court generally applies two standards: one is mandatory and the other is discretionary. *Pennzoil*, 149 F.3d at 201; *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998)(citation omitted). Initially, the court

---

2. Based on the documents submitted to the Court, the Plaintiff apparently does not contend that general jurisdiction exists in this matter. Nevertheless, based on these materials, it appears that the level of contacts Defendant has had with the Commonwealth of Pennsylvania does not rise to the continuous and systematic nature required to confer general jurisdiction. The Court of Appeals has held that a plaintiff must prove significantly more than mere minimum contacts to invoke the court's general jurisdiction. *Provident Nat'l Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). Thus, to satisfy due process, the contacts of a nonresident defendant with the forum must be continuous and substantial. *Id.* (citations omitted).

must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into Court there." *World-Wide Volkswagen,* 444 U.S. at 297. Whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)). In examining this relationship, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum State. *Burger King,* 471 U.S. at 472 (quoting *Keeton,* 465 U.S. at 774). The standards applicable to contract disputes in the Third Circuit were discussed in *Telecordia Tech. Inc. v. Telkom SA Ltd,* 458 F.3d 172, 177 (3d Cir. 2006):

> In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances.
> Traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contact. Moreover, physical presence in the forum is no longer determinative in light of modern commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum. . . . Finally, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation or its breach."

*Telecordia, Tech, Inc.,* 458 F.3d at 177 (quoting *General Elec. Comp. v. Deutz AG,* 270 F.3d 144, 151 (3d Cir. 2001) (citations omitted)).

Only if "minimum contacts" are established does the court apply the second standard–whether the defendant's contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen,* 444 U.S. at 292 (quoting *Int'l Shoe,* 326 U.S. at 316 (internal quotations omitted)).

8

In applying the fairness standard, the court will examine the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

Here, Defendant has directed its activities to Plaintiff in this judicial district. Specifically, Defendant initiated contact with Plaintiff in an effort to solicit business from Plaintiff. Senior representatives of Defendant traveled to this judicial district to introduce Plaintiff to its operations and to negotiate the terms of a sales agreement. Thereafter, Defendant placed numerous phone calls to Plaintiff to discuss pricing and other issues. Thereafter, when Defendant failed to fulfill its obligations per the terms of the Agreement, Defendant made numerous calls assuring Plaintiff that it would perform as required. Defendant traveled again to Pittsburgh to assure Plaintiff that delays in performance were temporary and that coal shipments would be forthcoming. Clearly, Defendant's contacts with the forum were instrumental in both the formation and the breach of the long-term coal supply agreement in issue. Certainly, Defendant has purposefully directed its activities to this judicial district, and it is reasonable for Defendant to anticipate that it would be sued herein.

Second, Plaintiff's action against Defendant in this judicial district "does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen,* 444 U.S. at 292 (quoting *Int'l Shoe,* 326 U.S. at 316 (internal quotations omitted)). Defendant has failed to demonstrate how the Court's exercise of specific personal jurisdiction over it would be

unreasonable.

2. Motion to Dismiss for Improper Venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a)

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Consequently, the Court must look to 28 U.S.C. § 1391 in order to determine whether venue is proper in this judicial district. 28 U.S.C. § 1391(a) provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district *where any defendant resides*, if all defendants reside in the same State." 28 U.S.C. § 1391(a) (1) (emphasis added).

28 U.S.C. § 1391(c) provides as follows:

> (**c**) *For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.* In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . ..

28 U.S.C. § 1391(c) (emphasis added).

Here, in this contract action where subject matter jurisdiction is premised only on diversity, Defendant Marion Docks, Inc., is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). As discussed at length *supra*, II.C.1., the Court has specific personal jurisdiction over this

10

Defendant. Consequently, venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391 (a) & (c). *See Bolus v. Morrison Homes, Inc.*, 2008 WL 4452658, at *2 (M.D. Pa. Sept. 30, 2008) (citing *Kahn v. Am. Heritage Life Ins. Co.*, 2006 WL 1879192, at *7 n.6 (E.D. Pa. June 29, 2006)).

In addition, pursuant to 28 U.S.C. § 1391(a)(2), venue is also proper in this District. In an action where subject matter jurisdiction is premised only on diversity of citizenship, venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .." 28 U.S.C. § 1391(a)(2). The United States Court of Appeals for the Third Circuit has indicated that the requirement that the events or omissions be "substantial" is intended to protect the defendant so that it is not required to appear in a remote district having only a minor relationship to the dispute. *See Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994). Consequently, the Court must consider the location of the events and omissions that gave rise to Plaintiff's claim, and not the Defendant's contacts with this judicial district. *See e.g., Pro Spice, Inc. v. Omni Trade Group, Inc.,* 173 F. Supp.2d 336, 339 (E.D. Pa. 2001) (citing *Cottman Transmission Sys.,* 36 F.3d at 294). The "substantial" events and omissions giving rise to Plaintiff's claim that occurred in this judicial district are the following: 1) Defendant initiated contact with Plaintiff in this district to explore whether Plaintiff would be interested in purchasing coal from Defendant; 2) Defendant traveled to this judicial district to engage in negotiations with Plaintiff; 3) Defendant corresponded with Plaintiff in this district regarding the Agreement; 4) Defendant traveled to this District to meet with Plaintiff regarding its failure to perform pursuant to the terms of the Agreement; 5) Defendant corresponded with the Plaintiff in this judicial district regarding its failure to perform pursuant to

the terms of the Agreement. Consequently, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because substantial events and omissions giving rise to Plaintiff's claim occurred in this judicial district.

Therefore, Defendant's Motion to Dismiss for Improper Venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) must be denied.

3. Motion to Dismiss pursuant to the Doctrine of *Forum Non Conveniens* or, in the alternative, to Transfer pursuant to 28 U.S.C. § 1404(a)

In federal courts, the common law doctrine of *forum non conveniens* now serves a limited purpose, and is generally employed by a district court to dismiss a case when the more convenient forum is in a foreign country. *Sinochem Int'l Co. LTD., v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007). *See, e.g.*, *Toll Bros., Inc. v. Nationwide Property & Casualty Ins. Co.*, 2005 WL 2600207, at *2 n. 1 (E.D. Pa. Oct. 13, 2005) (noting that "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad").

Other similar considerations are now generally governed by the statutory provisions of 28 U.S.C. § 1404(a). In considering a transfer under §1404(a), in accordance with the express terms of the statute, the Court must evaluate the convenience of the parties, the convenience of the witnesses and the interests of justice. *See* 28 U.S.C. § 1404(a). And although a plaintiff's choice of venue is not lightly disturbed, the Court must also consider a variety of other private and public factors. *See Jumara*, 55 F.3d at 879.

The private interests include the parties' preferences, the convenience of the parties, the unavailability of witnesses for trial, and the situs of books and records. *Id.* (citing 15 Wright,

Miller & Cooper § 3848-3853). *See also American Littoral Soc. v. U.S. E.P.A.*, 943 F. Supp. 548, 550 (E.D. Pa. 1996). Applicable public factors include the enforceability of the judgment; factors that could make the trial easier, more expeditious, or less expensive; relative administrative difficulties pertaining to court congestion; "the local interest in deciding local controversies at home"; the public policies of the fora; and the familiarity of the trial judge with applicable state law in diversity cases. *Jumara*, 55 F.3d at 879 (citing Wright, Miller & Cooper § 3854).[3]

      Here, Defendant argues that this action should be transferred to the Northern District of West Virginia, Clarksburg Division for the following three reasons: First, venue is proper there because Defendant resides in West Virginia, the alleged wrongful conduct took place there, and Defendant is subject to personal jurisdiction in West Virginia. Second, Defendant argues that the statutory factors weigh heavily in its favor because West Virginia would be a more convenient forum for Defendant and its witnesses, its business records are located there, as well as the surface mine in issue. Third, Defendant argues that the private factors weigh heavily in its favor in that it prefers to litigate in West Virginia, West Virginia law governs the agreement, and West Virginia is the location where the events occurred that form the basis of Plaintiff's claims and its defenses. Defendant further contends that most witnesses reside in West Virginia. Consequently, concludes Defendant, the trial of this case in West Virginia would be more efficient, expeditious and inexpensive.

---

3. *See also Elan Suisse Ltd. v. Christ*, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (noting that district courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Plaintiff responds that the law is clear that its choice of forum should not be lightly disturbed, and that a strong presumption exists in favor of plaintiff's choice of forum when the selected forum is plaintiff's home.  Further, Plaintiff contends that its claim arises not from activities at a mine in West Virginia, but from Defendant's activities and representations in this district, including the initial unsolicited contact, meetings in this district involving negotiations, phone calls leading up to the making of the Agreement, and subsequent meetings and phone calls in this district wherein Defendant allegedly promised that coal shipments would soon commence.  Plaintiff also states that it would be equally as inconvenient for Plaintiff to litigate in West Virginia as it would be for Defendant to litigate here; all of Plaintiff's witnesses with knowledge of the negotiation and administration of the Agreement, and Plaintiff's damages witnesses are all located in this judicial district.  Plaintiff continues that Defendant has failed to demonstrate that its witnesses will be unavailable for trial if forced to litigate here and that merely indicating that its witnesses would be inconvenienced is not enough to defeat Plaintiff's choice of forum.  As to the location of books and records, Plaintiff notes that Defendant only argues that such items are located in West Virginia; it does not argue that relevant documents could not be produced in this District via electronic means or otherwise.  As to the public interests involved, Plaintiff contends that a judgment by this Court would be enforceable; trial in this district would be practical and feasible; and that this judicial district is far less congested than the Northern District of West Virginia.  Finally, Plaintiff emphasizes that Defendant's reliance on the argument that a West Virginia judge would be more familiar with West Virginia law is misplaced.  While conceding that the Agreement provides that the dispute is governed by West Virginia law, Plaintiff notes that both Pennsylvania and West Virginia have adopted Article 2 of the Uniform Commercial

Code which governs contracts for the sale of goods such as coal, and that federal judges routinely apply the law of various jurisdictions.

The Court concurs with Plaintiff. Clearly, all of the factors thoroughly evaluated by Plaintiff favor that the litigation proceed in Plaintiff's chosen forum. As discussed *supra* at 10-12, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) (1) & (2) and § 1391(c). Likewise, the Court has specific personal jurisdiction over this Defendant as discussed *supra* at 5-10. In light of present technology, documentary evidence may be readily produced in this district. Defendant further discounts that Plaintiff's cause of action arises from its actions that occurred in this judicial district, and that many of the witnesses who may testify to these events are located here. Further, Defendant has come forward with no evidence as to the relative financial condition of the parties and that it would be financially disadvantaged in having to litigate here. Finally, Defendant has failed to demonstrate that the interests of justice would be served by its requested transfer. *See Jumara,* 55 F.3d at 879. Consequently, Defendant's Motion to Dismiss pursuant to the Doctrine of *Forum Non Conveniens* or, in the alternative, to Transfer pursuant to 28 U.S.C. § 1404(a) must be denied.

### III. <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Defendant's Motion to Dismiss, or, in the alternative, to Transfer at Doc. No. 6 be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days

from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

_____
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: June 10, 2009

cc: The Honorable Terrence F. McVerry
United States District Court Judge

All Counsel of Record
Via Electronic Filing