IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSOLIDATION COAL COMPANY, | ) | |
| a Delaware Corporation, | ) | Civil Action No. 08-1696 |
| | ) | |
| Plaintiff, | ) | Judge Joy Flowers Conti |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | Doc. No. 26 |
| MARION DOCKS, INC., a West Virginia | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendant Marion Docks, Inc. ("Defendant") be denied.

## II. REPORT

Plaintiff Consolidated Coal Company ("Plaintiff") alleges in its Complaint that Defendant materially breached the Agreement between the parties by failing to deliver coal to Plaintiff pursuant to the terms of the Agreement. Further, Plaintiff alleges in the Complaint that Defendant failed to fulfill Defendant's implied duties of good faith and fair dealing. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Defendant submitted a Motion for Summary Judgement, claiming that all of Plaintiff's alleged damages are precluded by Sections 1.4 and 11 of the parties' Agreement, and, therefore, summary judgment should be entered against Plaintiff and in favor of Marion Docks, Inc.

### *Relevant Facts and Procedural History*

The parties entered into a contract for the delivery of coal from one of Defendant's operating coal mines in the Pittsburgh Coal Seam on February 25, 2008.  (Doc. No. 1, ¶ 1.)  After some negotiation, the contract terms were finalized, requiring Defendant to deliver a total of 1,080,000 tons of coal, with 30,0000 tons to be delivered each month beginning in March 2008.  (Doc. No. 35-2, § 1.2)  The contract contained a Force Majeure clause, which generally relieves both parties of any liability or obligation where an extraordinary event named in the clause or circumstances beyond the control of the parties prevents one or both parties from fulfilling their obligations.  The Force Majeure clause in the present contract provided relief to the parties in the case of:

> acts of God, governmental regulation(s) [sic] war, acts of terrorism, floods, fires, geologic conditions, accidents, strikes, major breakdowns of equipment, shortage of carrier's equipment, accidents of navigation, interruptions to transportation, embargoes, orders of civil or military authority, or other causes, whether of the same or different nature, existing or future, foreseen or unforeseeable, which wholly or partly prevent the mining, processing [sic] shipment and/or loading of the coal by [Defendant], or receipt by [Plaintiff].

(Doc. No. 35-1, § 1.4.)  If one of the parties should invoke the Force Majeure clause within the contract, "the obligations of the Non-Performing Party giving such notice shall be suspended to the extent caused by such Force Majeure." *Id.*  Further, "the Non-Performing Party shall use its reasonable efforts to remedy or eliminate such Force Majeure.  Any deficiencies in deliveries caused by Force Majeure shall not be restored except by mutual agreement of the parties."  *Id.*

The contract also contained a limitation of damages clause pursuant to W.Va. Code § 46-2-719(1)(a) (the agreement "may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts").

Section 1.4 of the parties' Agreement states as follows:

> Unless excused by Force Majeure, if Seller fails to deliver all or part of the quantity of coal to be delivered hereunder during any month, then Seller shall pay to the Buyer for each ton of such deficiency (the "Deficiency") an amount equal to the positive difference, if any, obtained by subtracting the Total Base Price for the Deficiency from the Replacement Price. "Replacement Price" means the price at which Buyer, acting in a commercially reasonable manner, purchases substitute coal for the Deficiency ( additional transportation and other charges, if any, incurred by Buyer as a result of taking delivery of substitute coal at a location other than the Delivery Point).

(Doc. No. 35-1, § 1.4.) This remedy is also referred to as the "cover remedy".

Section 11 of the Agreement provides as follows:

> Neither Seller nor Buyer shall be liable to the other for consequential, incidental, punitive, exemplary or indirect damages, lost profits, or business interruption damages, whether by statute, in tort or in contract, under any indemnity provision or otherwise.

(Doc. No. 35-1, § 11.)

Defendant failed to supply coal in accordance with the contract beginning in March 2008. (Doc. No. 1, ¶ 14.)  Plaintiff alleges that, during the period between March 2008 and July 2008, Plaintiff's representatives repeatedly demanded that Defendant fulfill its obligations.  (Doc. No. 1, ¶ 15.)  In reply, Defendant indicated that on May 28, 2008, the contract was suspended indefinitely pursuant to the Force Majeure clause.  (Doc. No. 1, ¶ 18.)  Defendant indicated this reliance on the Force Majeure clause again in a letter dated September 8, 2008, stating that adverse geological conditions, resulting in safety concerns for the employees and equipment, effectively rendered delivery impossible.  (Doc. No. 1-3.)  Plaintiff alleges, however, that, during meetings between the parties to discuss these issues and in numerous telephone conversations during May and June, Defendant repeatedly promised that its coal shipments under the agreement would commence in the very near future.  (Doc. No. 1, ¶ 17.)

3

Plaintiff brought the current case before the Court due to a series of events that led Plaintiff to believe that Defendant claimed Force Majeure improperly, thus breaching the contract and failing to fulfill its implied duties of good faith and fair dealing.  Defendant submitted a Motion for Summary Judgment and Brief in Support on October 20, 2009, asserting that Plaintiff's alleged damages are precluded by Sections 11 and 1.4 of the parties' contract, and thus Plaintiff has no basis for recovery and no case against Defendant.  (Doc. No. 26, Doc. No. 27, pp. 7-8.)

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment presents three arguments disputing this conclusion and demonstrating that issues of material fact remain.  First, Plaintiff argues that its requested damages do not fall under Sections 11 and 1.4 of the parties' Agreement, and are thus not precluded by the Agreement.  (Doc. No. 33, pp. 11-14.) Second, Plaintiff argues that the remedies set forth in Section 1.4 are not exclusive pursuant to West Virginia Code § 2-719(1)(b).  (Doc. No. 33, pp. 14-16.)  Third, and finally, Plaintiff argues that, even if the remedies are exclusive, they have failed of their essential purpose pursuant to West Virginia Code § 2-719(2).  (Doc. No. 33, pp. 16-18.)

In its Initial Disclosures filed at the initial stage of the litigation, Consolidation provided a preliminary estimate of its substantial damages in this matter:

> A computation of Consolidation's damages is not yet fully known  and has not been fully calculated based on the information reasonably available to Consolidation at this early stage of the litigation.  However, Consolidation has suffered significant monetary damages associated with Marian Docks' failure to deliver any coal under the Agreement. The measure of Consolidation's damages may be measured by the difference between the market price of the subject coal washed by Consolidation and the contract price set forth in the Agreement at the time when Consolidation learned of Marion Dock's breach. Consolidation believes and therefore avers that the market price for coal to be supplied by Marion Docks, once washed, was in excess of $100.00 per ton as of this date. Consolidation anticipates that a precise damage calculation will be possible after discovery regarding the

> market price for the coal Marion Docks was to supply to Consolidation under
> the Agreement.

(Doc. No. 33, p. 5.)

The parties presented oral argument before the undersigned on February 1, 2010, on the Motion for Summary Judgment.[1]

### Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying an absence of evidence to support the nonmoving party's case. *Id.* at 325.

Once the moving party has met its burden, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court).  An issue is genuine only "if the evidence is such that a reasonable jury could

---

[1] During oral argument, Defendant's counsel also argued that the speculative nature of the mining process was considered in reaching the terms of the agreement, although there is no actual mention of this in the document.  The Court notes that Defendant's argument regarding the factors accounted for during the course of drafting the contract is, in and of itself, a factual question that would preclude summary judgment.

return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the evidence relied upon in support of a motion for summary judgment must be admissible, it need not be in admissible form. *See* Fed.R.Civ.P. 56 (e); *Celotex Corp.,* 477 U.S. at 324; *J. F. Feeser,Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

### Discussion

Defendant's Motion for Summary Judgment argues that Plaintiff's recovery is barred pursuant to Sections 1.4 and 11 of the parties' Agreement. Basically, the argument is that Plaintiff did not purchase any coal to "cover" the failure to deliver by the Defendant and is looking instead to recover lost profits, which are specifically precluded under the Agreement. Plaintiff does not disagree that it did not purchase any coal to cover the loss, but argues in opposition that the remedy and limitation of liability provided under Sections 1.4 and 11 of the Agreement are not exclusive and that, even if the aforementioned sections did provide for an exclusive remedy, then the provided remedy failed of its essential purpose.

Pursuant to Section 6.1 of the parties' agreement, West Virginia law applies to this case. West Virginia adopted the Uniform Commercial Code's ("U.C.C.") rule that an agreement for the sale of goods "may limit or alter the measure of damages recoverable." W.Va. Code § 42-2-719(1)(a). Resort to such a contractual limitation of damages, however, "is optional *unless the remedy is expressly agreed to be exclusive*, in which case it is the sole remedy." W.Va. Code § 46-2-719(1)(b) (emphasis added). The comments following Section 46-2-719 provide that Subsection (1)(b) "creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly

stated."  This aligns with the purpose of contracting pursuant to the rules of the U.C.C., which is articulated in Comment 1 following Section 46-2-719.

> [I]t is the very essence of a sales contract that at least minimum adequate remedies be available . . . . [W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this article.

W.Va. Code § 46-2-719 cmt. 1.  The U.C.C. therefore requires that, despite a contractual limitation of damages, there must at least be a minimum adequate remedy for the victim of a breach.  *Id.*

Although Plaintiff's Complaint seeks relief outside of the provisions of the parties' Agreement under West Virginia Code § 46-2-713, the case presently before the Court hinges on whether the contractual limitation of remedies provided within Sections 1.4 and 11 of the contract are the exclusive remedies for the Plaintiff in the face of a breach of contract pursuant to West Virginia Code §46-2-719.  Defendant argues that the word "shall," as it appears in Section 11 of the contract, sufficiently indicates the parties' intent to exclusively limit their remedies.  In support of this argument, Defendant relies on *Caperton v. A.T. Massey Coal Co., Inc.*, No. 33350, 2009 WL 3806071 (W.Va. Nov. 12, 2009), in which the West Virginia Supreme Court of Appeals held that a forum-selection clause was mandatory where words, such as "shall," or other exclusive terms such as "sole"or "only," were used.  *Id.* at ¶6 (W.Va. Nov. 12, 2009) ("The determination of whether a forum-selection clause is mandatory or permissive requires an examination of the particular language contained therein.  If jurisdiction is specified with mandatory terms such as 'shall,' or exclusive terms such as 'sole,' 'only,' or 'exclusive,' the clause will be enforced as a mandatory forum-selection clause.  However, if jurisdiction is not modified by mandatory or exclusive language, the clause will be deemed permissive only").  In an attempt to extend the *Caperton* analysis to the present case, Defendant reasons that the word "shall" in the parties' Agreement is to

be construed as mandatory. In accordance with Defendant's adaptation of the *Caperton* case, the limitation of remedies in Sections 11 and 1.4 would thus be exclusive.

It is key to note that the court in *Caperton* was interpreting the use of the word "shall" within a forum selection clause. The case is distinguishable, however, as it was not a case covered by the U.C.C.. The *Caperton* case not only lacks a relevant interpretation of the word "shall" in the context of a contractual limitation of damages, it also does not take into account the driving purpose of contract law: to place the parties in the position that they would have been had the contract been performed. Restatement (Second) of Contracts § 344 cmt. a (1981) (stating that, where a contract has been breached, the court "enforces the broken promise by protecting the expectation that the injured party had when he made the contract. It does this by attempting to put [the injured party] in as good a position as he would have been in had the contract been performed, that is, had there been no breach"). In addition, interpreting this provision as an exclusive remedy would leave Plaintiff without any real remedy under the contract in violation of the essence of a sales contract pursuant to West Virginia U.C.C. Section 46-2-219 cmt. 1 (stating that "it is of the very essence of a sales contract that at least minimum adequate remedies be available").

Defendant further relied in oral argument and in supplemental briefing on *CogniTest Corp. v. Riverside Publishing Co.*, 107 F.3d 493 (7th Cir. 1997),[2] to support Defendant's claim that the remedy provided in Sections 11 and 1.4 of the parties' Agreement is exclusive. In *CogniTest*, the United States Court of Appeals for the Seventh Circuit held that a contractual limitation of remedies

---

[3] The contract in *CogniTest* was governed by Illinois law. *CogniTest*, 107 F.3d at 496. Illinois' Section 2-719 and the following comments are a direct adaptation of the Uniform Commercial Code just as just as West Virginia's Section 2-719 and the following comments are. Thus, the interpretation of the meaning of "shall" under Section 2-719 of Virginia's Uniform Commercial Code by the District Court for the Eastern District of Virginia is relevant to the Court's interpretation of the word "shall" in the current case.

8

using the word "shall" constituted an exclusive remedy; however, the exclusivity of the remedy did

not, in fact, leave the plaintiff in that case without remedy. *CogniTest*, 107 F.3d at 499.   In addition,

the Seventh Circuit's holding that the parties intended the retained payment remedy to be exclusive

was based on the circumstances surrounding the execution of the marketing agreement at issue  and

not on the word "shall" itself. *Id.*  The Seventh Circuit explicitly noted in the *CogniTest* opinion that

the U.C.C. "require[s] that there at least be a minimum adequate remedy for the victim of a breach."

*Id.* at 496.   In fact, only after the Seventh Circuit determined that the limitation of remedies in

*CogniTest* left plaintiff with a minimum adequate remedy did the Circuit then go so far as to

interpret the limitation as exclusive pursuant to the surrounding circumstances under U.C.C. Section

2-719.  *Id.*

      In response to Defendant's arguments, Plaintiff cites multiple cases to support the argument

that inclusion of the word "shall" does not necessarily render a contractual limitation of remedies

exclusive.  For example, in *Philip Morris USA Inc. v. Appalachian Fuels*, No. 3:08-CV-527, 2009

WL 1011650 (E.D.Va. April 15, 2009), defendant failed to deliver coal pursuant to a contract

between plaintiff and defendant.[3]  The agreement before the District Court for the Eastern District

of Virginia provided a contractual limitation of remedies which stated that if the seller failed to

provide the required coal, the seller "shall pay buyer" the difference between the replacement coal

and the contract price.  *Id.* at *1.   The court disagreed with the defendant's argument that the

provision limited the plaintiff's remedy to the cost of replacement coal obtained by plaintiff and held

---

[4] The contract in *Philip Morris* was governed by Virginia law.  *Philip Morris*, 2009 WL 1011650
at *5.  Section 2-719 of Virginia's Uniform Commercial Code and the following comments are a
direct adaptation of the Uniform Commercial Code just as West Virginia's Section 2-719 and the
following comments are.  Thus, the interpretation of the meaning of "shall" under Section 2-719 of
Virginia's Uniform Commercial Code by the District Court for the Eastern District of Virginia is
relevant to the Court's interpretation of the word "shall" in the current case.

that the remedy was not exclusive under Section 2-719 of the U.C.C. *Id.* at *7-8.  Plaintiff cites four additional cases to support the argument that the word "shall" in and of itself does not render a limitation of remedies exclusive: *United States v. City of Twin Falls, Idaho*, 806 F.2d 862 (9th Cir. 1986) (holding that a remedy provision using the word "shall" was not exclusive); *Foley v. L&L Int'l, Inc.*, 364 S.E.2d 733, 735 (N.C. Ct. App. 1988) (holding that a clause providing that a seller "will refund" a down payment if the automobile was not delivered within ninety days is not an exclusive remedy); *In re Crysen/Montenay Energy Co.*, 156 B.R. 922, 925 (S.D.N.Y. Bankr. 1993) (holding that a provision stating that where oil fails "to meet the delivery temperature requirement, Seller shall reimburse Buyer's cost of raising the temperature" was not an exclusive remedy); and *McKenzie v. Alla-Ohio Coals, Inc.*, No. 78-0600, No.1979 WL 30087 (D.D.C. 1979) (holding that a clause providing that price adjustments "shall be assessed" for coal exceeding specified ash content is not an exclusive remedy).

Under both the West Virginia U.C.C. and related case law, interpreting the word "shall" such that it does not create an exclusive remedy by implication aligns with the requirement under Section 46-2-719 that an exclusive limitation of the available remedies must be clearly expressed.  *See* W.Va. Code § 46-2-719 cmt. 2 (stating that "Subsection 1(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive.  If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed").  That is not the case here. In addition, to state that the parties' limitation of damages was exclusive in this case would leave Plaintiff wholly without remedy, thus contradicting the requirement under the U.C.C. that parties to a contract must have at least a minimum adequate remedy.  *See* W.Va. Code § 46-2-719 cmt. 1 (stating that "it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept

10

the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract"). Therefore, with respect to the remedy provisions within the U.C.C. and as those provisions are applied to the facts of this case, the phrase "shall" is not sufficient to render this particular limitation of damages clause exclusive.

Because it is the recommendation of the Court that the contractual limitations within Sections 1.4 and 11 are not exclusive, it need not reach the question of whether the contractual limitation of damages failed of its essential purpose. *See* W.Va. Code § 46-2-719 cmt. 1 (stating that a provision fails of its essential purpose when the limitation "fails in its purpose or operates to deprive either party of the substantial value of the bargain"). The Court reserves its opinion regarding the validity of the representations made by either party on this matter.

## III.   CONCLUSION

It is respectfully recommended that Defendant's Motion for Summary Judgment be DENIED. In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: February 22, 2010               By the Court:

LISA PUPO LENIHAN

11

U.S. MAGISTRATE JUDGE

cc:    Counsel of Record